UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 25-1389

Caption [use short title]

Motion for: COAs & remand for an evidentiary hearing for a §2255 petition

PETER BRIGHT V UNITED STATES

Set forth below precise, complete statement of relief sought:

Remand the case back to the district court for an evidentiary hearing and/or grant COAs for the claims not correctly decided by the district court.

MOVING PARTY: PETER BRIGHT          OPPOSING PARTY: UNITED STATES

[ ] Plaintiff       [ ] Defendant
[✓] Appellant/Petitioner   [ ] Appellee/Respondent

MOVING ATTORNEY: PETER BRIGHT (PRO SE)   OPPOSING ATTORNEY: ALEXANDER LI ET AL.
[name of attorney, with firm, address, phone number and e-mail]

PETER BRIGHT 76309-054        US ATTORNEY'S OFFICE FOR SDNY
FCI ELKTON                    ONE ST ANDREW'S PLAZA
PO BOX 10, LISBON OH, 44432

Court- Judge/ Agency appealed from: SDNY - PKC

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[✓] Yes  [ ] No (explain): _____

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:
Has this request for relief been made below?        [ ] Yes [ ] No
Has this relief been previously sought in this court?  [ ] Yes [ ] No
Requested return date and explanation of emergency:

Opposing counsel's position on motion:
[ ] Unopposed [ ] Opposed [✓] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes [ ] No [✓] Don't Know

Is oral argument on motion requested?  [ ] Yes [✓] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  [ ] Yes [✓] No If yes, enter date: _____

Signature of Moving Attorney:

_____  Date: 2025-08-28   Service by: [ ] CM/ECF [✓] Other [Attach proof of service]

Form T-1080 (rev. 12-13)

Provide a statement that identifies the relevant facts and makes a showing of likely merit as to each issue you intend to present on appeal. See Local Rule 24.1

1) The district court did not hold an evidentiary hearing for a §2255 petition, even though the existing record was insufficient to address the claims made. Second Circuit precedent says that a hearing must be held in such circumstances.

2) Four specific claims of constitutional dimension are raised that were improperly decided on the basis of speculation as a product of the lack of evidentiary hearing.

Contents:

1 copy of motion for COA

1 T-1080

1 certificate of service

1 copy of district court's denial of § 2255 motion and COAs

1 copy of district court's denial of motion for reconsideration

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

PETER BRIGHT

**CERTIFICATE OF SERVICE\***

Docket Number: 25-1389

v.

UNITED STATES

I, PETER BRIGHT , hereby certify under penalty of perjury that
(print name)

on 2025-08-28 , I served a copy of Motion for a COA
(date)

_____
(list all documents)

by (select all applicable)\*\*

___ Personal Delivery  ✓ United States Mail  ___ Federal Express or other
Overnight Courier

___ Commercial Carrier  ___ E-Mail (on consent)

on the following parties:

| ALEXANDER LI | 1ST ANDREWS PLAZA | NEW YORK | NY | 10007 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| ELIZABETH DANIELS | " | | | |
| Name | Address | City | State | Zip Code |
| NATHAN REHN | 26 FEDERAL PLAZA | NEW YORK | NY | 10278 |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |

\*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or
proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously
filed.

\*\*If different methods of service have been used on different parties, please complete a separate
certificate of service for each party.

2028-08-28
Today's Date

_____
Signature

Certificate of Service Form (Last Revised 12/2015)

**Pro Se Certificate of Compliance with**

**Word or Page Limits Adapted from Federal Rules of Appellate Procedure Form 6**

A document filed with the Court must not be longer than the Federal Rules of Appellate Procedure or the Court's Local Rules permit. Check the box for the document you are filing and state the number of words or pages.

❑    **Brief** contains _____ words. [14,000 word limit - LR 32.1(a)(4)(A)], or
      **Brief** contains _____ pages. [30 page limit - FRAP 32(a)(7)(A)]

❑    **Reply Brief** contains _____ words. [7,000 word limit - LR 32.1(a) (4)(B)], or
      **Reply Brief** contains _____ pages. [30 page limit - FRAP 32(a)(7)(A)]

❑    **Writ of Mandamus/Prohibition** contains _____words. [7,800 word limit - FRAP 21(d)(1)], or
      **Writ of Mandamus/prohibition** contains _____ pages. [30 page limit - FRAP 21(d)(2)]

☑    **Motion** or **Response to the Motion** contains _____ words. [5,200 word limit - FRAP 27(d)(2)(A)], or
      **Motion** or **Response to the Motion** contains \_\_12\_\_ pages. [20 page limit - FRAP 27(d)(2)(B)]

❑    **Reply to the Motion** contains _____ words. [2,600 word limit - FRAP 27(d)(2)(C)], or
      **Reply to the Motion** contains _____ pages. [10 page limit - FRAP 27(d)(2)(D)]

❑    **Petition for Panel or En Banc Hearing** contains _____ words. [3,900 word limit - FRAP 35(b)(2)(A)], or
      **Petition for Panel or En Banc Hearing** contains _____ pages. [15 page limit - FRAP 35(b)(2)(B)]

❑    **Petition for Panel Rehearing** contains _____ words. [3,900 word limit - FRAP 40 (b)(1)], or
      **Petition for Panel Rehearing** contains _____ pages. [15 page limit - FRAP 40 (b)(2)]

February 2017

Peter Bright versus United States

25-1389


Motion for Certificates of Appealability of the denial of a § 2255 petition

Peter Bright petitioned Judge P. Kevin Castel to vacate, set aside, or correct his conviction of attempted exploitation of a minor (18 USC § 2422(b)), pursuant to 28 USC § 2255.


That petition was denied, and a Certificate of Appealability (COA) was also denied. Bright now petitions the Second Circuit Court of Appeals for COAs for four of the claims raised in his § 2255 petition.


Background

Peter Bright, then a 38-year-old man, living in Brooklyn, New York, regularly engaged in kinky sex with consenting adults. Among other things, he engaged in a kind of role-playing known in the BDSM community as "age play". In age play, one or more participants roleplay as minors; other participants play the role of adults with authority over the minors, such as a parent, nanny, or teacher. This roleplaying establishes a power relationship between the participants.


Bright used a range of online services to find age play partners. One of these was "kinkd", an app specifically designed and marketed towards the BDSM community. On kinkd, Bright found the profile of a person calling herself "princessmom" who purported to want to find someone to teach her kids about the "birds and the bees". Given the BDSM context, and the fact that princessmom listed her BDSM role as "mommy"--a term used in age play to denote a woman in the adult/dominant role--Bright presumed that princessmom was an age player wanting to engage in some kind of teacher/student scenario.

i

Accordingly, Bright messaged princessmom. Over the course of several days, princessmom had Bright describe the "lessons" that the participants might engage in. During their communication, Bright at times felt that there was something a little "off" about princessmom, and was concerned about the possibility that she may have been emotionally damaged, may not have had any partners at all, may have been trying to extort him, or might even have been talking about child molestation rather than age play. The ambiguity in the conversation was acknowledged and commented on by princessmom when messaging Bright, and subsequently admitted at trial by Special Agent Elizabeth Jensen, the FBI agent roleplaying as princessmom.

Feeling that she was more likely than not harmless, Bright arranged to meet princessmom on 22 May, 2019. Though he hoped that she was indeed an age player (either with or without any pre-existing partners) he was prepared in case she should turn out to be criminal--he arranged to meet her at a time when she said that her "prince" and "princess" were unavailable (whether they be roleplaying partners or actual minors), and he made a recording of the meeting that he could provide to law enforcement should princessmom indeed be a criminal.

Bright duly met with princessmom and was arrested. He was charged with attempted enticement of a minor (18 USC § 2422(b)). Subsequent investigation by the FBI did not find any child pornography, attempts to meet with minors, or any other evidence of other crimes. Bright proceeded to trial on the sole 2422(b) count, represented by Amy Gallicchio of the Federal Defenders of New York.

At trial, the basic facts were not at issue; Bright did not contest that he communicated and met with princessmom. The sole contention was his intention in so doing. Bright argued that he was looking for sex with consenting adults (and, if necessary, to report princessmom to the police). The government argued that he was looking for sex with

2-

minors, and had no intention of contacting law enforcement. As such, Bright's credibility when describing his intentions was fundamental to his defence.

His first trial, in February 2020, produced a mistrial after the jury hung with a 7-5 split in favour of conviction. In his second trial, in March 2020, with a near-identical presentation of the evidence, an 11-person jury voted to convict. Bright was sentenced to 144 months in prison, followed by 7 years of supervised release.

Bright's direct appeal was denied in 2022. He filed a pro se § 2255 motion which was denied in December 2024 without an evidentiary hearing. The district court also denied a COA. It further denied a motion to reconsider in May 2025 This appeal followed.

## Claims being appealed

The motion to reconsider urged the district court to reconsider three claims of ineffective assistance of counsel (IAC) implicating the Sixth Amendment right to counsel, and one claim that Bright's right to a fair trial was fatally undermined by the Covid-19 pandemic, implicating his Fifth Amendment right to due process and Sixth Amendment right to trial by jury. It is these four claims for which a COA is now being sought.

## IAC claim 1: Galicchio's failure to pursue an entrapment defence

Facts:

In his § 2255 motion and reply brief, Bright included affidavits made under penalty of perjury stating that:

*    Gallicchio remarked on several occasions of the suitability of an entrapment defence

*    Bright stated that he could not testify that he was entrapped into committing the crime, because he could not lie on the stand

*  Because of this, Gallicchio did not ask the jury to be instructed on entrapment, and did not argue entrapment to the jury.

3

Entrapment defences are not uncommon in trials resulting from 2422(b) sting operations. The particular facts of Bright's case made the argument unusually compelling:

* In its summing up argument, the government conceded that Bright may have "mistakenly believed he was engaging in age play when he first started talking to the mother"-- acknowledging that Bright was not predisposed to commit the crime and that the crime was of the government's design.

* There was no evidence (either at trial or in the discovery material) that Bright had any attraction to prepubescent minors, nor was there any evidence that he had ever attempted to find, communicate with, or engage with such.


Unreasonable performance:

Gallicchio did not properly understand the entrapment defence. Since <u>United States v Matthews</u> (1988) it is plainly established that entrapment can be argued alongside a defence that denies the intent to commit a crime. That is, Bright could have testified that he did not commit the crime, <u>and</u> Gallicchio could have argued that <u>if</u> the jury did not believe Bright's claimed intent <u>then</u> it could consider whether he was entrapped into forming a criminal intent.


That is to say, Bright's refusal to testify that he was entrapped was not, in law, a valid basis to ignore the entrapment defence. Under <u>Hinton v Alabama</u> (2014) an attorney's "ignorance of a point of law [...] is a quintessential example of unreasonable performance under <u>Strickland</u>".


Prejudice:

The previous hung jury makes clear that Bright's was not the typical trial with "overwhelming" evidence. Rather, it was closely decided--the kind of trial where small factors could have swung the balance one way or the other.

Bright clearly was not looking for sex with minors when he first approached princessmom--
as all but conceded by the government in its summing up--but clearly also met with
princessmom. A reasonable juror might perceive a tension between these facts, and feel
uncomfortable both with the government's primary argument--that Bright intended all along
to look for sex with minors--and with Bright's defence--that he never intended to look
for sex with minors. An entrapment verdict would be the best way to account for the
perceived change in intent. It is likely that the jurors struggled to reconcile the facts
with the arguments--in Bright's first trial, at least one juror wavered, voting first to
acquit, then to convict, and then, ultimately, to acquit, indicating a certain
dissatisfaction with both sides' arguments. Eliminating entrapment as a reasonable way to
address this struggle hurt Bright.

The government opposed this claim, stating that the decision was a strategic one, and
speculated that Gallicchio did not pursue entrapment lest the government bring in
unspecified and hypothetical evidence that would hurt Bright.

The court denied this claim for the same speculative reason.

IAC claim 2: Gallicchio allowed the government to lie about Bright's actions

Facts:

In its opening statement the government claimed that Bright told the FBI that he met with
princessmom as part of his work as an investigative journalist:

* "[T]he defendant gave the FBI his cover story: he told the FBI that he was a
journalist for a technology website and that he recorded the meeting" (Trial
transcript 19)

* "The editor-in-chief will testify that the defendant was not an investigative

journalist [...] The defendant had never written about child exploitation and would not have been allowed to write about that topic." (Tr. 20)

The government's theory was that Bright lied to the FBI by claiming that he was working on a story about child exploitation, and met princessmom for that reason. It called Kenneth Fisher, editor-in-chief of the website that Bright worked for, solely to debunk this theory. In his direct examination Fisher was asked:

* "If the defendant, Mr Bright, had wanted to write about child exploitation, would that have been outside his usual domain?"

* "Would you have approved an article [by] Mr Bright on child exploitation?"

* "Are you familiar with the term 'investigative journalism'?"

* "Was Mr Bright an investigative journalist?" (Tr. 287-290)


Unreasonable performance:

The issue here is that the entire attack was a strawman:

* Bright never claimed to be an investigative journalist.

* Bright never claimed to be working on a story about child exploitation.

* Bright never attempted to use his occupation as a journalist as "cover" for his meeting with princessmom.

The investigative journalism "cover" theory was a strawman wholly concocted by the government so that it could be demolished. Fisher's testimony, denying that Bright was an investigative journalist, denying that Bright was writing about child exploitation, duly eviscerated the government's strawman, and Fisher was called for no other purpose. The government did not, and could not, offer a single piece of evidence in support of its theory. It had no basis to call Fisher as a witness, or ask him the questions it asked him.


Gallicchio did not object when the government created the strawman in its opening statement. She did not object when the government called a witness solely to debunk its strawman argument. She did not object to most of the questions to that witness. She did

6

object to one question--"Would you have approved an article [by] Mr Bright on child exploitation?"--but did not explain that the investigative journalist/child exploitation angle was a government fabrication and that there was no basis to ask such a question, and the objection was overruled.

Prejudice:

This was a trial that hinged on Bright's credibility. The government's strawman argument painted Bright as a liar. More to the point, it represented him as lying about the central question of the trial: what was his intent when he met with princessmom? Further, it gave the impression that the defence he delivered at trial differed in important ways from the explanation he gave the FBI--when in fact it did not.

There was no possible strategic advantage to allowing the government to attack and undermine Bright in this way.

In opposing the claim, the government stated that Bright did tell the FBI that he was a journalist (entirely ignoring that Bright did not claim to be an investigative journalist, and entirely ignoring that he never claimed to be working on an article on child exploitation), and hence that any objection would have been futile.

In denying the claim, the district court said that such questions were "appropriate and relevant in light of his statements to law enforcement" without identifying those statements that made the questions reasonable. The court could not have done so, because Bright did not make any statements to the FBI that suggested that he was an investigative journalist or that he was working on an assignment on child exploitation.

<u>IAC claim 3: Gallicchio failed to draw attention to, and have the district court address,</u>
<u>the government's own theory of innocence</u>

Facts:

In its final entreaty to the jury, the government stated that Bright met princessmom for a legal reason. He met princessmom with "fresh Trojan Magnums. Extra large condoms. Not condoms that would fit him, but that would be perfect for teaching children about how to use condoms, to show them how to put them on a vibrator or banana or whatever else he wants to use" (Tr. 604).

This theory of why Bright met princessmom, and why he was carrying condoms, is striking because it would be entirely legal. If that were the reason that Bright met princessmom then he broke no law. The government argued that this was indeed the case, and, further, that the condoms in question <u>could not</u> have been used for any sexual purpose, as they would not fit.

Unreasonable performance:

This was a plain concession by the government of reasonable doubt. If even the prosecution in a case is promoting a theory that the best fit for the evidence is that the defendant had legal intentions--and that is what the government did--then it is impossible to maintain that guilt was proved beyond a reasonable doubt.

Bright's counsel did file a post-trial motion for a judgement of acquittal, but this motion only renewed and urged reconsideration of arguments made at the close of the government's case. It did not mention any part of the trial that happened after that point, and so did not make any reference to the government's theory of innocence.

8

Prejudice:

With the government admitting reasonable doubt over his guilt, the motion for a judgement of acquittal should have produced an acquittal for Bright. Gallicchio allowed the district court to ignore the government's concession, and as a result, his conviction was unreasonably allowed to stand. This is plainly prejudicial.

The government's opposition to this claim ignored its substance entirely.

The district court's denial of this claim stated that the district court made a lengthy written denial of the motion for a judgement of acquittal. That denial did not mention or address the government's theory of innocence. The district court chose to ignore the substance of the claim in its entirety.

## Claim 4: The Covid-19 pandemic unreasonably pressured and distracted Bright's jury

Facts:

Bright's jury was given the case on Friday 13th March, 2020. This coincided with a considerable worsening of the Covid-19 pandemic, especially in New York City.

* On 2020-03-12, Mayor Bill de Blasio declared a state of emergency in New York City.

* On 2020-03-13, President Donald Trump declared a national state of emergency.

* On 2020-03-13, Surgeon General Vivek Murthy posted on Twitter that "Because our visibility into the spread of COVID19 in the U.S. is so compromised due to lack of testing, it makes it even more urgent that we be aggressive about mitigation efforts like physical distancing so we can reduce the likelihood of further spread." (http://threadreaderapp.com/thread/1238500475068125192.html)

* The CDC advised that the best mitigation strategy was social distancing, telling people to "avoid crowds", and that infection risk "may increase in crowded, closed-in settings."

*   By 2020-03-15, Assistant US Attorneys working out of the US Attorney's Office for the Southern District of New York had themselves requested and received permission to work from home, allowing them to avoid the exposure risks of travelling to and working in an office, thereby taking advantage of the best protective measure available at the time for both themselves and their loved ones.
*   On 2020-03-15, New York State Governor Andrew Cuomo ordered the closing of all public schools in New York City, Westchester County, and Nassau County.

Further, a second jury trial, <u>United States v Carl Andrews</u>, also in the Southern District of New York, was stayed on 16th March, 2020. This stay was initially opposed by the government, but as of 2020-03-15, the government dropped its opposition. On 16th March, 2020, the judge in that case, the Honourable Paul Engelmayer, explained his reasons for the stay: the impact of the pandemic on the jury. He said that:

*   Close proximity of the jurors, contrary to the CDC's social distancing advice was inevitable "even if the Court were to relocate the trial to the largest facilities in the courthouse", because the jurors would be required to share a jury room and two jury bathrooms. They would also be exposed to contact with others "en route to and from the court."
*   There was no "tenable" way to provide social distancing for the jury.
*   Distraction was a "grave risk", and he had "grave doubts" that a reasonable jury would not be "terribly distracted" by the pandemic and its consequences. "A reasonable juror would likely feel anxious and rushed and distracted".
*   A jury would be "highly unlikely [...] to be deliberate and patient and methodical".

Bright's jury had even greater reason to be worried:
*   One of the 12 deliberating jurors did not appear on Monday 16th March, 2020. He told the court that he was unwell, and possibly infected with Covid-19.

\*     The final day of deliberations was in an unfamiliar environment; for its final day, the trial was moved to a different, larger courtroom so that the jurors would not be in quite such close proximity to one another.

The missing juror and the new jury room were ever-present reminders of the risks faced by the jurors from the simple fact of turning up to court each day and sitting in deliberation. These created enormous pressur on the jurors to come to a verdict, any verdict, as fast as possible, so that they could protect themselves and their families by sheltering in the safety of their homes.

What Judge Engelmayer said in <u>Andrews</u> was equally true for Bright; the Covid-19 pandemic precluded the deliberation and concentration needed by a jury, especially for a trial so closely decided as Bright's was.

In denying this claim, the district court stated that there was no reason to believe that any of the jurors was concerned or compromised by the Covid-19 pandemic, and that it had no impact on the verdict.

<u>Conclusion</u>

These four claims all implicate Bright's constitutional rights. The district court denied them without holding an evidentiary hearing. The three IAC claims were all deemed to be legitimate strategy--even the first claim, which, as a product of Gallicchio's mistaken understanding of the law <u>cannot</u> be a valid strategic decision--without any confirmation from Gallicchio that they were indeed strategic decisions, and without any suggestion as to what that strategy might have been. Particularly for the third claim, wherein Gallicchio failed to highlight that the government itself was arguing for Bright's innocence, it is hard to see what possible strategy was involved.

Under Gonzalez v United States (2013) an evidentiary hearing is required if the movant can show a "plausible" claim for relief. Denial of a hearing is allowed only if the record "conclusively shows" that no relief is warranted. Given that the record obviously omits Gallicchio's thinking and ratinale, it is clear that a hearing should have been conducted.

Similarly, for the fourth claim, a hearing is necessary to ascertain what the jurors knew about the state of the pandemic, and how this impacted their frame of mind on entering the deliberations.

The district court has refused to hold such a hearing, and refused to seek or consider any testimony from Gallicchio or the jurors. Even after the motion for reconsideration, the court held firm on this point.

Per Jackson v Leonardo (1998) the "usual practice should be to remand Strickland cases to the district court to permit the attorney in question to testify and explain her actions".

For the foregoing reasons, Peter Bright respectfully requests that the Court remands the case back to the district court so that an evidentiary hearing can be held, or, in the alternative, that the Court grants COAs for the four claims enumerated.

Respectfully submitted,

28 August, 2025

Peter Bright, pro se

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PETER BRIGHT,

                    Petitioner,                19-cr-521 (PKC)
                                         22-cv-8847 (PKC)


            -against-                  OPINION AND ORDER

UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Peter Bright, proceeding pro se, moves to vacate, set aside or correct his sentence

pursuant to 28 U.S.C. § 2255. (19 Cr. 521, ECF 108.) In a verdict returned on March 16, 2020,

a jury found Bright guilty of one count of attempted enticement of a minor to engage in illegal

sexual activity, in violation of 18 U.S.C. § 2422(b). The Court sentenced Bright principally to

144 months' imprisonment. (ECF 101.) Bright urges that he did not receive the effective

assistance of counsel guaranteed by the Sixth Amendment because his trial attorney did not raise

an entrapment defense, bring certain objections at trial or assert an insufficiency-of-evidence

argument in post-trial briefing. See generally Strickland v. Washington, 466 U.S. 668, 687-89,

693-94 (1984). He also asserts that circumstances related to the onset of the Covid-19 pandemic

impaired the jury's ability to deliberate fairly, resulting in an unfair trial that deprived him of the

due process guaranteed by the Fifth Amendment.

        For the reasons that will be explained, Bright's motion for section 2255 relief will

be denied in its entirety.

BACKGROUND.

The Indictment charged Bright with one count of attempted enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). (ECF 9.)

Bright's first trial commenced on February 11, 2020. (ECF 55.) The Court declared a mistrial on February 19, 2020, after the jury failed to reach a unanimous verdict. (ECF 60.)

Bright's second trial commenced on March 10, 2020. (ECF 75.) The government rested on March 12, 2020. The defense presented its case on March 12 and 13. Bright testified in his own defense. The jury began deliberations on Friday, March 13 and continued its deliberations on Monday, March 16, when it reached a verdict. The Court excused one juror on March 16 after that person reported an illness, and the unanimous verdict was reached by an eleven-person jury. (See ECF 83.)

At trial, the government offered evidence that Bright attempted to engage in sexual activity with a nine-year-old boy and seven-year-old girl by coordinating with an undercover FBI agent who posed as their mother. The government called four witnesses, including the undercover FBI agent. Evidence included chat records from messaging apps, a recording between Bright and the agent created by Bright himself, and items that he brought to a meeting where he and the undercover FBI agent discussed his preparatory steps for engaging in sexual activities with the two children.

Evidence reflected that in April 2019, Bright contacted a self-identified "[m]ommy" who claimed on an online platform called KinkD to be "[l]ooking for a teacher to teach my kids about the birds and the bees." (Tr. 32-33.) The undercover agent posing as that

- 2 -

mother identified her children as age seven and nine, and continued to engage Bright via messages on WhatsApp. (Tr. 41-42.) These included graphic messages from Bright and requests for photos of the two children. Trial evidence showed that over an eight-day period in May 2019, Bright exchanged 769 WhatsApp messages with the purported mother. (Tr. 79.)

In May 2019, Bright and the purported mother arranged for an in-person meeting, after which she was to bring him to her apartment for a sexual encounter with the two children. In advance of the meeting, Bright noted his "fear" that the mother was "a cop." (Tr. 71.) When Bright arrived to the meeting in May 2019, he showed her his online test results for sexually transmitted diseases and confirmed that he wanted to walk to her home and meet her children. (Tr. 76.) As they walked to the apartment to meet the children, Bright was arrested. (Tr. 76-77.) Four condoms were found on his person at the time of his arrest. (Tr. 221-26.) Bright also had made an audio recording of his meeting with the purported mother. (Tr. 226-27.)

In his post-arrest statements to law-enforcement, Bright stated that he initially believed that his prospective sexual partners would be adults role-playing as children, but once he received photographs of actual children, realized that this was not an exercise in fantasy. He stated that he then decided to gather evidence against the mother. At that time, he told law enforcement that he did not consider approaching authorities with evidence of the chats already in his possession.

Bright testified in his own defense at trial, and the defense also called as a witness Dr. James Cantor, a clinical psychologist. Cantor testified about a sexual kink called "age play" in which participants pretend to be an age different than what they are. (Tr. 310.) Bright testified that he first believed that the mother was an "age player," but after seeing photos of the children, concluded that she was either a "scammer or a child molester." (Tr. 379-80, 448.) He

- 3 -

testified that he intended to "play along" with her and "get some evidence, get a recording, and give that recording to law enforcement." (Tr. 449.) Bright testified that he met with the mother in order to learn where she lived and to record an incriminating statement, and that the condoms in his possession were from a date the preceding Friday. (Tr. 472-73, 429-30.) Bright testified that, contrary to his post-arrest statement, he had considered giving his chats to the police but did not want to surrender his phone. (Tr. 467-68, 472, 541.)

At the close of his case, the defense moved for a judgment of acquittal under Rule 29, Fed. R. Crim. P, based on insufficient evidence, and the Court denied the motion. (Tr. 299-300.) The defense did not renew the motion for acquittal at the close of Bright's own case. (Tr. 551-53.) After the verdict was returned, Bright moved for a post-trial judgment of acquittal under Rule 29, but did not raise any new arguments and cited to the existing record. (ECF 87.) The Court denied the motion in an Opinion and Order, concluding that there was sufficient evidence for a reasonable jury to conclude that Bright attempted to entice a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). (ECF 92.)

Bright filed a direct appeal. He urged that this Court deprived him of an impartial jury because it did not ask prospective jurors about their prejudices against people with nonconventional sexual practices with sufficient specificity, improperly excluded expert testimony about the lack of connection between "age play" and pedophilia, and improperly admitted certain evidence under Rule 404(b). The Second Circuit affirmed the judgment and conviction in a summary order. United States v. Bright, 2022 WL 53621 (2d Cir. 2022).

DISCUSSION.

I.    <u>Legal Standard.</u>

        A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" <u>Graziano v. United States</u>, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (citation omitted).  Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" <u>United States v. Hoskins</u>, 905 F.3d 97, 102 (2d Cir. 2018) (quoting <u>Graziano</u>, 83 F.3d at 590).  An evidentiary hearing may be necessary if the motion "set[s] forth specific facts supported by competent evidence," but not if the factual assertions are "vague, conclusory, or palpably incredible." <u>Gonzalez v. United States</u>, 722 F.3d 118, 130-31 (2d Cir. 2013) (quotation marks omitted).

        A defendant asserting that counsel's performance was constitutionally deficient under the Sixth Amendment must satisfy a two-prong test.  "Under <u>Strickland</u>, we first determine whether counsel's representation 'fell below an objective standard of reasonableness.'  Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Hinton v. Alabama</u>, 571 U.S. 263, 272 (2014) (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 366 (2010)); <u>Strickland</u>, 466 U.S. at 694).

        In deciding whether counsel's performance was objectively reasonable, a court must make "'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance.'" <u>Bierenbaum v. Graham</u>, 607 F.3d

36, 50–51 (2d Cir. 2010) (quoting <u>Strickland</u>, 466 U.S. at 689). In deciding the prejudice prong,

a court must determine whether "'there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> (quoting

<u>Strickland</u>, 466 U.S. at 694). "'[A]n error by counsel, even if professionally unreasonable, does

not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment.'" <u>Griggs v. Lempke</u>, 797 F. App'x 612, 617 (2d Cir. 2020) (summary order) (quoting

<u>Strickland</u>, 466 U.S. at 691).

II.    <u>Bright Has Not Identified Ineffective Assistance Related to an Entrapment Defense.</u>

      Bright urges that trial counsel performed ineffectively by not pursuing an

entrapment defense or advising him on the availability of such a defense. He states that law

enforcement "originate[d] a criminal design" in order "to implant in an innocent person's mind

the disposition to commit a criminal act, and then induce the commission of the crime so that the

government may prosecute." (Def. Mem. at 10-11.) He asserts that "[t]he question of

entrapment was plainly one that should have been put to the jury." (<u>Id.</u> at 13.)

      Entrapment is an affirmative defense that requires a defendant to demonstrate that

the government induced the crime, at which point the government must prove predisposition

beyond a reasonable doubt. The Second Circuit explains:

> Entrapment is an affirmative defense that [defendant] must show by
> a preponderance of the evidence. The defense has two elements: (1)
> government inducement of the crime, and (2) lack of predisposition
> on the defendant's part. If a defendant presents credible evidence of
> government inducement, then the prosecutor must show
> predisposition beyond a reasonable doubt. A defendant is
> predisposed to commit a crime if he is ready and willing without
> persuasion to commit the crime charged and awaiting any propitious
> opportunity to do so. The government may prove predisposition by,
> among other things, showing defendant's previously formed design

to commit the crime or his willingness to commit the crime as
evidenced by his ready response to the inducement.

United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000) (internal citations and quotation marks
omitted).

      According to Bright, the trial evidence shows he was not predisposed to commit
the underlying offense. He notes "that many minutes elapsed before Mr. Bright even
acknowledged the sending of the picture of the male child; hardly what one would expect from
an eager criminal." (Def. Mem. 13.) Bright states that he previously engaged in "full and frank
discussions of human anatomy and sex acts" but "became downright oblique and
uncharacteristically coy when faced with the picture, using euphemism and allusion where
before he had been explicit." (Id.) He notes that he met with the undercover agent at 2 p.m. on a
weekday, a time when the two children would have been in school, and "explicitly told the agent
that he wanted to meet her alone, without the children being present. These are not the acts of
someone eager and willing to commit a criminal act." (Id.)

      Trial counsel's decision to forgo an entrapment defense was not ineffective
performance under Strickland. "When a petitioner claims that he 'would have pursued an
[entrapment] defense but for his lawyer[ ]' the Strickland 'prejudice inquiry will depend largely
on whether the affirmative defense likely would have succeeded at trial.'" Stevenson v. United
States, 2021 WL 5401658, at *4 (S.D.N.Y. Nov. 18, 2021) (Preska, J.) (brackets in original;
quoting Kovacs v. United States, 744 F.3d 44, 53 (2d Cir. 2014)). "An attorney is not required to
argue each and every potential defense. This is especially true with regard to the entrapment
defense, which could materially harm the interests of the defendant and has a small likelihood of
success at trial." Aluear-Rodriguez v. United States, 1996 WL 67939, at *2 (S.D.N.Y. Feb. 15,
1996) (Duffy, J.). That is because the entrapment defense "in effect admits that the defendant

- 7 -

engaged in criminal conduct, and attempts to explain away the commission of criminal acts. Defense counsel tend to shy away from alternative arguments that dilute the force of a denial of wrongdoing." United States v. Balis, 2009 WL 1117274, at *6 (S.D.N.Y. Apr. 24, 2009) (Lynch, J.).

The evidence that Bright cites in support of an entrapment defense is thin: that mere "minutes" elapsed before he responded to a photo of the "male child" does not suggest a lack of predisposition, nor does any purported shift to "coy" or "oblique" language following what Bright himself calls "explicit" and "frank" conversation. Similarly, the fact that he met with the purported mother approximately one hour before the children were to be released from school does not suggest a lack of predisposition and is consistent with preparatory conduct. In its effort to prove predisposition, the government likely would have emphasized that Bright himself initiated online contact with a self-described "mommy," requested photos of the two children, and exchanged hundreds of explicit messages with the undercover agent posing as the mother. "Even more disastrously, had [Bright] raised such a defense, the door would have been opened to further proof of predisposition . . . ." Balis, 2009 WL 1117274, at *6.

Based on the thin inferences that Bright draws from the trial record and the strong risk that an entrapment defense could have badly backfired, his attorney performed reasonably in not pursuing an entrapment defense. Even if counsel performed ineffectively by not raising the defense or fully advising Bright on the issue of entrapment, he has not shown a reasonable probability that the trial outcome would have been different. Bright has failed to show either ineffective performance or resulting prejudice, and section 2255 relief premised on an entrapment defense will be denied.

III.    Bright Has Not Identified Ineffective Assistance Based on Counsel's Failures to Object.

Bright also asserts that his trial counsel was ineffective based on the failure to raise certain objections at trial. He has not demonstrated either ineffective performance or resulting prejudice, and his motion for section 2255 relief will be denied.

First, Bright contends that trial counsel performed ineffectively when she did not object to "prosecutorial mischaracterizations" when the government, in its opening statement, said that Bright told the FBI that he was a journalist for a technology website and that he recorded his meeting with the undercover agent. (Def. Mem. 15-16.) According to Bright, these statements mischaracterized his defense, which did not relate to work as an investigative journalist. But Bright dos not dispute that he made this statement to law enforcement, and any objection likely would have been futile. Even if such an objection were sustained, there is no basis to conclude that the trial outcome would have been different.

Second, Bright contends that trial counsel should have objected to questions that the government asked of Kenneth Fisher, the editor-in-chief of a website that employed Bright. (Def. Mem. 16.) The government asked Fisher whether Bright was an investigative journalist and whether reporting on child exploitation would have been within his "usual domain." (Id.) The Court overruled defense counsel's objection to the question, "Would you have approved an article by Mr. Bright on child exploitation?" (Id.; Tr. 288.) Bright urges that defense counsel should have objected to the government's other questions because they "fundamentally misrepresented" his defense. (Def. Mem. 16.) But questions about Bright's journalistic background were appropriate and relevant in light of his statements to law enforcement, and Bright's attorney was not ineffective in failing to assert an objection that likely would have been

- 9 -

futile. Also, there is no basis to conclude that the trial outcome would have been different if the objections had been raised and sustained.

Third, Bright contends that the government mischaracterized the evidence in its summation by stating that Bright "said he forgot" to turn over his chat records when the FBI inquired why he did not do so. (Def. Mem. 17.) The government then stated, "So he tried to cover it up again by telling you that he only pretended to forget." (Id.; Tr. 563.) Bright asserts that the government offered no evidence of statements by Bright claiming that he forgot or pretended to forget to turn over any chats, and that the government's summation mischaracterized the evidence. (Def. Mem. 17.) At trial, Bright testified that he had considered turning over his chats to law enforcement but did not want to surrender his phone, and conceded that his initial statement to the FBI that he did not consider turning over his chats was untruthful. (Tr. 467-68, 472, 541.) "The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence." United States v. Tocco, 135 F.3d 116, 130 (2d Cir. 1998). "The law has long recognized that summations – and particularly rebuttal summations – are not detached expositions," so "prosecutors' comments standing alone will rarely warrant overturning conviction." United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks and citations omitted). While the government's characterization placed an argumentative gloss on Bright's testimony, his trial counsel was not ineffective in failing to object because an objection would emphasized the inconsistencies in Bright's statements. There also is no basis to conclude that the trial outcome would have been different if such an objection had been raised and sustained.

Fourth, Bright asserts that in its summation the government mischaracterized expert testimony with the statement, "Now, the defense wants to make this trial into something it

isn't about, to frame it as if, if he is into kink, then he cannot intend to have sex with minors."
(Def. Mem. 17; Tr. 601.) As characterized by Bright, his defense was that "Mr. Bright cannot be
inferred to want to have sex with minors solely on the basis of his interest in age-play." (Def.
Mem. 17.) Bright urges that the government made "improper insinuations and assertions
calculated to mislead the jury." (Id. 18.) Bright's challenge to the government's argument is
semantic, and his trial counsel was not ineffective in failing to object to the government's view
of the evidence. There also is no basis to conclude that the trial outcome would have been
different if such an objection had been raised and sustained.

Bright has not identified ineffective performance or resulting prejudice based on
trial counsel's failure to raise these objections at trial.

IV.  Bright Has Not Identified Ineffective Assistance Based on Counsel's Post-Trial Motion.

In a letter-motion of June 15, 2020, the defense moved for a renewed judgment of
acquittal pursuant to Rule 29. (ECF 87.) It urged that the government failed to meet its burden
on each element of the defense and cited to the portion of the trial transcript where the defense
moved for a judgment of acquittal. (Id.) The Court denied the motion in a nine-page Opinion
and Order, concluding that defendant did not meet the heavy burden of establishing that no
reasonable trier of fact could have found him guilty based on the trial evidence. (ECF 92.)

Bright urges that his counsel performed ineffectively in filing a post-trial motion
that he describes as "proforma, perfunctory" and "relying only on the existing record." (Def.
Mem. 23.) He argues that the trial evidence showed, at most, actions that "might be considered
unusual" or "in poor taste" but did not demonstrate beyond a reasonable doubt that he attempted
"to attain the assent of minors to engage in some activity . . . ." (Def. Mem. 26.)

"With respect to Strickland's first prong, there is no professional requirement that defense counsel file a motion for a judgment of acquittal on every count in every case no matter the merits of the motion." Awulye v. United States, 2020 WL 774093, at *4 (S.D.N.Y. Feb. 18, 2020) (Sullivan, J.) (citing United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987)). For the reasons explained in the Opinion and Order of September 2020, the evidence was sufficient for a reasonable trier of fact to find Bright guilty. (ECF 92.) Counsel did not perform ineffectively by electing not to file a lengthier, more verbose memorandum, and Bright has not raised any arguments to support the conclusion that a more exhaustive Rule 29 memorandum would have succeeded.

V.    Bright Is Not Entitled to Section 2255 Relief Based on
      Circumstances Related to the Covid-19 Pandemic.

Bright asserts that the onset of the Covid-19 pandemic was a source of stress and distraction to the jury, causing them to rush deliberations and resulting in an unfair trial that deprived him of the due process guaranteed by the Fifth Amendment. (Def. Mem. 4-10.) He states that jurors confronted "a mortal risk" by attending trial, and were unable to "remain conscientious, fair and impartial . . . ." (Id.) He notes that in United States v. Andrews, 19 Cr. 131 (PAE), Judge Engelmayer stayed the trial on March 16, 2020, after the defense urged that the Covid-19 pandemic presented a health risk to the jurors, and that Judge Engelmayer later declared a mistrial. (Def. Mem. 6-9.)

Bright also points out that during the trial, one juror was excused on March 16, 2020, after he reported feeling ill. (Id. at 9; see Tr. 645.) Defense counsel then moved for a mistrial and that motion was denied. (Def. Mem. 10; see Tr. 645-47.) Bright argues that the juror's absence was a "constant reminder" to the remaining jurors about the dangers they faced from the Covid-19 virus. (Def. Mem. 9.)

- 12 -

Because Bright did not raise this claim on direct appeal, he is in procedural default and may not bring this claim for relief through a section 2255 motion. "A motion under § 2255 is not a substitute for an appeal. In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (quotation marks and internal citation omitted). "If such a claim has not been presented on direct review, the procedural default bar may be overcome only where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" Id. Bright suggests that the trial record was inadequate to raise this issue on direct appeal but does not identify what further developments would have been required. (Def. Mem. 10.) His vague assertion does not demonstrate cause for procedural default. As to prejudice, the Opinion and Order on Bright's Rule 29 motion explains that the evidence was sufficient to support a reasonable trier of fact's finding of guilt (ECF 92), and Bright has not demonstrated prejudice. For the same reasons explained in that Opinion and Order, Bright also cannot demonstrate actual innocence.

In a reply memorandum and related declaration, Bright asserts that he urged his appellate counsel to raise on appeal the effect of the Covid-19 pandemic on jury deliberations, but that appellate counsel elected not to do so. (ECF 120, 121.) Ineffective assistance of counsel may demonstrate cause sufficient to excuse procedural default. See Sapia v. United States, 433 F.3d 212, 218 (2d Cir. 2005). "In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. However, a petitioner may

- 13 -

establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted); accord McKee v. United States, 167 F.3d 103, 106-07 (2d Cir. 1999) (applying Mayo to section 2255 motion). As noted, Bright's appellate counsel urged on direct appeal that the Court deprived him of an impartial jury because it did not ask prospective jurors about their prejudices against people with nonconventional sex practices with sufficient specificity, improperly excluded expert testimony about the lack of connection between "age play" and pedophilia and improperly admitted certain evidence under Rule 404(b). See Bright, 2022 WL 53621, at *1. While these arguments were unsuccessful, Bright does not demonstrate why these arguments "were clearly and significantly weaker" than Bright's speculative contentions about the effect of Covid-19 on jury deliberations. See Mayo, 13 F.3d at 533.

Even if this argument were not procedurally barred, Bright does not identify a due process violation. "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error . . . or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir.1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Bright does not point to evidence suggesting that jurors were influenced or distracted by the onset of the pandemic in a way that impeded their ability to deliberate fairly. The jury began deliberations on the afternoon of Friday, March 13 and resumed deliberations on Monday, March 16, when it reached a verdict. On March 16, the Court moved the trial to a larger courtroom with a larger jury room in order to provide more space. (Tr. 645.) At 12:36 p.m. on March 16, the Court received a jury note requesting review of certain exhibits and

clarification about the FBI's review of Bright's devices. (Tr. 649.) The request is consistent with careful review of the evidence, as opposed to a jury rushing to a verdict because it was preoccupied by pandemic-related concerns. When the jury returned its verdict, the Deputy Clerk polled the jurors, who each confirmed his or her verdict. (Tr. 658-59.) At no point in trial proceedings did any juror indicate that he or she was influenced by concerns related to Covid-19 or act in a way suggesting a rush to judgment.

To the extent that Bright points to the stay of trial in Andrews, that trial was positioned differently than Bright's. On the morning of March 16, 2020, Judge Engelmayer observed that there was "a ways to go in this trial" and that a verdict would likely not be reached until Thursday, March 19 at the earliest, during which time there was "a grave risk" of juror distraction. See 19 Cr. 131 at Tr. 827 (ECF 448). Judge Engelmayer also noted that if the timing had been different, it may have been appropriate to question the jurors daily regarding their ability to deliberate fairly. See id. 828. He expressed doubt that "we could have retained 12 jurors through Thursday." (Id.) In Bright's case, however, the evidence was closed, summations complete, Court instructions delivered and deliberations in their second day. The circumstances of the trial stay in Andrews do not speak to the jury's deliberations in this trial or support an inference that Bright did not receive a fair trial.

Accordingly, Bright is procedurally barred from raising this argument in a section 2255 motion, and if he were not, the motion would be denied on the merits.

CONCLUSION.

Bright's motion for section 2255 relief is DENIED. The Clerk is respectfully directed to terminate the motion (19 Cr. 521, ECF 108) and to close the civil case, 22 Civ. 8847.

Bright has not made a substantial showing of the denial of a constitutional right, and accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
December 12, 2024

COPY MAILED TO:

Peter Bright
Reg. No. 76309-054
FCI Petersburg Medium
Federal Correctional Institution
P.O. Box 1000
Petersburg, VA 23804

- 16 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PETER BRIGHT,

                        Petitioner,               19-cr-521 (PKC)
                                              22-cv-8847 (PKC)

        -against-                       <u>ORDER</u>

UNITED STATES OF AMERICA,

                        Respondent.
-----------------------------------------------------------------x

CASTEL, U.S.D.J.

        Peter Bright, proceeding <u>pro se</u>, moves for reconsideration of the Opinion and Order of December 12, 2024, which denied his motion for relief brought pursuant to 28 U.S.C. § 2255. (22 Civ. 8847, ECF 14.) The motion for reconsideration will be denied.

        "A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority." <u>Van Buskirk v. United Grp. of Companies, Inc.</u>, 935 F.3d 49, 54 (2d Cir. 2019). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).

        The motion for reconsideration reargues matters that the Court addressed in its sixteen-page Opinion and Order. (<u>See</u> 22 Civ. 8847, ECF 13; 19 Cr. 521, ECF 123.) To the extent that Bright points to any issue not directly addressed in the Opinion and Order, including Bright's specific views on how the jury may have evaluated an entrapment defense, his views on

how the jury was misled about "the distinction between a regular journalist and an investigative journalist," his trial counsel's failure to highlight a government argument related to the placement of condoms on bananas that Bright urges amounted to an acknowledgement of reasonable doubt, and New York State pronouncements related to the onset of the Covid-19 pandemic, such matters do not alter the conclusions previously reached by the Court in its Opinion and Order.  See Shrader, 70 F.3d at 257.

Bright also asserts that the Court erred in its analysis of whether his trial counsel performed reasonably pursuant to Strickland v. Washington, 466 U.S. 668 (1984), because it described the strategic weaknesses of an entrapment defense without an explanation from counsel about her own thought process.  But in conducting a Strickland analysis, "a court must indulge the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment" and "to affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (quotation marks, citations and brackets omitted; emphasis added).  It is well-established that Strickland entails an objective analysis of counsel's performance and does not turn on subjective intent:

> Although courts may not indulge post hoc rationalization for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions.  There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect. After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. Strickland, however, calls for an inquiry into the objective

- 2 -

reasonableness of counsel's performance, not counsel's subjective
state of mind.

Harrington v. Richter, 562 U.S. 86, 109-10 (2011) (quotation marks and internal citations

omitted).

      For the foregoing reasons, Bright's motion for reconsideration is DENIED. The

Clerk is respectfully directed to terminate the motion (22 Civ. 8847, ECF 14) and to close the

civil case, Bright v. United States of America, 22 Civ. 8847 (PKC).

      Bright has not made a substantial showing of the denial of a constitutional right,

and accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v.

Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). The Court certifies, pursuant to 28 U.S.C. §

1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in

forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369

U.S. 438, 444-45 (1962).

      SO ORDERED.

                    P. Kevin Castel
                United States District Judge

Dated: New York, New York
      May 1, 2025


COPY MAILED TO:

Peter Bright
Reg. No. 76309-054
FCI Petersburg Medium
Federal Correctional Institution
P.O. Box 1000
Petersburg, VA 23804

- 3 -

LISBON, OHIO 44432

LEGAL MAIL

<>76309-054<>
Clerk Office
40 Foley SQ
US Court of Appeals
NEW YORK, NY 10007
United States

USM-4-LD
SDNY








NAME: Peter Bright
REG#: 76309-054
FCI CORRECTIONAL INSTITUTION ELKTON
P. O. BOX 10
LISBON, OHIO 44432

LEGAL MAIL

⟷76309-054⟷
Clerk Office
40 Foley SQ
US Court of Appeals
NEW YORK, NY 10007
United States

USM41D
SDNY